IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

EUGENE J. MALONEY,       :
                          :
        Plaintiff,        :
                          :
     v.               :     Civil Action No. 15-981-LPS
                          :
NANCY A. BERRYHILL, Acting  :
Commissioner of Social Security   :
                          :
        Defendant.     :

_____

Eugene J. Maloney, Wilmington, Delaware. *Pro se* Plaintiff.

David C. Weiss, Acting United States Attorney, Office of the United States Attorney, Wilmington, Delaware and Heather Benderson, Special Assistant United States Attorney, Office of the General Counsel, of the Social Security Administration, Philadelphia, Pennsylvania.

Of Counsel:  Nora Koch, Regional Chief Counsel, Region III and Kimberly Varillo, Assistant Regional Counsel, of the Social Security Administration, Philadelphia, Pennsylvania.


**MEMORANDUM OPINION**


March 27, 2017
Wilmington, Delaware

STARK, U.S. District Judge:

## I.      INTRODUCTION

Plaintiff Eugene L. Maloney ("Maloney" or "Plaintiff"), who proceeds *pro se* and has been granted leave to proceed *in forma pauperis*, appeals from the decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("Commissioner" or "Defendant"), denying his application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 1383(c)(3).[1] Presently pending before the Court are cross-motions for summary judgment filed by Maloney and the Commissioner.[2] (D.I. 15, 18) For the reasons set forth below, the Court will deny Plaintiff's motion for summary judgment and will grant Defendant's motion for summary judgment.

## II.     BACKGROUND

### A.     Procedural History

Maloney filed his application for DIB on January 22, 2013, and for SSI on February 1, 2013, alleging disability as of December 15, 2010, due to bursitis, basil cell carcinoma skin cancer, and neck, shoulder, and wrist impairments. (D.I. 9-5 at 2-12; D.I. 9-6 at 14) The application was denied on March 6, 2013, and upon reconsideration on July 16, 2013. (D.I. 9-3 at 22-23, 46-47) Maloney filed a request for a hearing on August 15, 2013. (D.I. 9-4 at 20-21) A hearing was held before an Administrative Law Judge ("ALJ") on December 8, 2014. (D.I. 9-2 at 36-62) The ALJ issued a

---

[1]Under § 405(g), "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision . . . . Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides . . . ."  42 U.S.C. § 405(g).

[2]The Court construes Plaintiff's February 3, 2017 response to the show cause order as a motion for summary judgment. (*See* D.I. 15)

decision finding that Maloney was not disabled under the Act. (*Id.* at 17-35)  Maloney filed a request

for review by the Appeals Council and submitted additional evidence that was considered. (D.I. 9-3

at 3, 5; D.I. 9-11 at 1-66; D.I. 9-12 at 1-28)  After considering whether the ALJ's action, findings, or

conclusion was contrary to the weight of the evidence of record, the Appeals Council found no

basis for changing the ALJ's decision and denied Maloney's request for review on August 27, 2015,

making the ALJ's decision the final decision of the Commissioner. (D.I. 9-2 at 2-16)

  On October 28, 2015, Maloney filed a Complaint seeking judicial review of the ALJ's

decision. (D.I. 2)  Maloney moved for summary judgment on February 3, 2017, and the

Commissioner filed a cross-motion for summary judgment on March 7, 2017. (D.I. 15, 18)

  **B.**  **Medical Evidence**

  **Right Wrist**. On June 23, 2009, Maloney was seen by Dr. Helen Ting ("Dr. Ting") with

complaints of right wrist pain. (D.I. 9-7 at 55)  Maloney explained that eight to nine months earlier,

when he was using clippers while pruning, he heard a crack and has had right wrist tenderness ever

since. (*Id.*)  Maloney was prescribed physical therapy, steroids, anti-inflammatories, and a brace. (*Id.*

at 56-57)  He was referred to several hand surgeons, including Dr. J. Douglas Patterson ("Dr.

Patterson"). (*Id.* at 57)

  Maloney was seen by Dr. Patterson on June 29, 2009, with complaints of right radial wrist

pain, worsening since August 2008. (*Id.* at 38)  Maloney complained of daily pain. (*Id.*)  A June

2009 MRI of Maloney's right wrist revealed scaphoid lunate advanced collapse (SLAC) wrist. (*Id.* at

39-40)  Upon physical examination, Maloney was in no acute distress, with normal sensibility to light

touch, normal capillary refill and turgor and tight intrinsics. (*Id.* at 38)  He had a slight decrease of

range of motion on the right side. (*Id.*)  Dr. Patterson administered a steroid injection, and

recommended splinting, therapy, and follow-up in one month. (*Id.*)  In January 2013, Maloney

presented to Dr. Ting with complaints of right wrist pain and right shoulder pain, with shoulder pain as the chief complaint. (*Id.* at 61)

**Right Shoulder.** Maloney has a history of right shoulder pain. (D.I. 9-7 at 67-69; D.I. 9-8 at 36-40, 44-45) In April 2013, he underwent right shoulder arthroscopy, limited debridement of SLAP[3] lesion, and open rotator cuff repair. (D.I. 9-8 at 48-51) In June 2013, during post-surgery office visits, Maloney reported that his status was improving, and his orthopedic surgeon, Dr. Charles Hummer, III ("Dr. Hummer") made note of acceptable post-operative ranges of motion. (D.I. 9-9 at 17-18) In July 2013, Dr. Hummer noted that Maloney's range of motion was acceptable, and that Maloney continued to show slow improvement. (*Id.* at 15) Dr. Hummer agreed with Maloney's request for a respite from formal physical therapy. (*Id.*)

A January 2014 EMG of Maloney's right upper extremity was essentially normal, and physical examination revealed intact sensation in Maloney's hand with a grip strength of four out of five. (D.I. 9-9 at 23) Maloney complained of numbness in the right upper extremity (greater in the right arm) and right arm weakness. (*Id.*) When Maloney was seen on March 17, 2014, he complained of moderate pain, which was constant and worsening. (*Id.* at 1) Conservative treatment options were discussed with Maloney, and he was advised that the next surgical step would be a total shoulder replacement. (*Id.*) As of November 24, 2014, Maloney had right shoulder active painful range of motion with limiting factors of pain. (D.I. 9-12 at 5) As of March 17, 2015, Maloney continued with conservative treatment, received cortisone injections to the right shoulder, stated that his symptoms were moderate, and continued to have active painful range of motion. (*Id.* at 16-17)

---

[3]A superior labral tear from anterior to posterior.

3

**Left Shoulder.** In September 2011, Maloney presented to Dr. Ting with tightness and left shoulder pain, but denied arm weakness, tingling, or radiation into the arm. (*Id.* at 58) Maloney was prescribed anti-inflammatory medication for one month and physical therapy. (*Id.* at 60) In January 2013, Maloney reported that the left shoulder had improved on its own. (*Id.* at 61) In August 2013, Maloney complained of left arm pain and numbness. (D.I. 9-9 at 39) An MRI of the left shoulder was ordered and it revealed a near full thickness to full thickness tear of a rotator cuff tendon and mild osteoarthritis. (*Id.* at 39, 51) A November 2013 EMG evaluation of the left upper extremity was essentially normal, although it did reveal evidence of left ulnar entrapment neuropathy at the elbow consistent with cubital tunnel syndrome of chronic duration. (*Id.* at 44-47)

In December 2013, Maloney was seen at Premier Orthopedics and described his left arm pain as moderate to severe, occasional and fluctuating without radiation, and further reported that he was not in that much pain and declined the offered cortisone injection. (*Id.* at 8) Medical notes indicate that upon review of the images, it was not believed that Maloney had a full thickness tear, and clinically he had tenderness over the biceps tendon and AC joint, which are signs of impingement. (*Id.*) Maloney had satisfactory left shoulder range of motion and strength. (*Id.*) As of November 24, 2014, Maloney had normal, active pain-free range of motion of the left shoulder. (D.I. 9-12 at 5) As of March 17, 2015, Maloney continued with conservative treatment, received cortisone injections to the left shoulder, stated that his symptoms were moderate, and continued with normal active pain-free range of motion in the left shoulder. (*Id.* at 16-17)

**Back.** Maloney has a history of back pain. In June 2009, Maloney presented for treatment, reporting neck pain and cervical strain symptoms. (D.I. 9-7 at 56) Maloney complained of headache and cervical neck pain in August 2013, and a cervical spine MRI taken on August 23, 2013 revealed degenerative changes throughout the cervical region, superimposed on congenital narrowing of the bony spinal canal. (D.I. 9-9 at 39-41; D.I. 9-10 at 24-31)

4

A November 19, 2014 MRI revealed no significant change of the moderate spinal canal and neural foraminal stenoses, essentially stable moderate degenerative discogenic disease with disc osteophyte complexes, and arthrosis of the facet and uncovertebral joints from C3 to C7 levels, except for mild increase in the size of moderate central, left lateral disc protrusion at C5-C6, causing moderate to severe spinal canal and neural foraminal stenoses with mild compression of the spinal cord without intramedullary signal. (D.I. 9-10 at 24-31)

A January 2014 EMG of the right upper extremity was essentially normal with no evidence of right cervical radiculopathy or myopathy. (D.I. 9-9 at 42) As of January 3, 2014, Maloney denied neck pain. (*Id.* at 42) A November 2014 cervical spine MRI revealed essentially stable moderate degenerative disc disease. (D.I. 9-10 at 28; D.I. 9-12 at 21) On March 30, 2015, Maloney underwent a left C3-C7 facet joint nerve ablation. (D.I. 9-12 at 23-26)

**2014 Automobile Accident.** Maloney was involved in a motor vehicle accident on June 18, 2014. Maloney he did not present to the hospital after the accident even though he had pain. (D.I. 9-10 at 16) On June 27, 2014, Maloney presented to his primary care provider with complaints of pain in the side base of his head and lower back, was diagnosed with acute cervical and lumbar strain, and prescribed medication. (D.I. 9-9 at 31; D.I. 9-10 at 16) On July 23, 2014, Maloney sought chiropractic care for neck pain, associated headaches, and left shoulder pain. (D.I. 9-10 at 16) He provided a history of neck and shoulder pain mostly on the right, and reported that he had been asymptomatic at the time of the June 2014 accident. (*Id.*) Maloney described immediate moderate to severe neck pain and stiffness, progressively worsening; gradual onset of headaches in the temple region, progressively worsening, moderate to severe; and left shoulder pain as a gradual onset, progressively worsening, sharp and aching. (*Id.* at 16-17) The chiropractic treatment did not include the right shoulder. (*Id.* at 2-20) Chiropractor Dr. John J. Mahoney, II, DC ("Dr. Mahoney")

reported that Maloney improved with each visit and responded well to conservative treatment.  (D.I. 9-10 at 2, 5, 10, 11)

**Assessments of Plaintiff's Ability to Perform Work.**  On March 6, 2013, State agency physician Darrin Campo, M.D. ("Dr. Campo"), reviewed Maloney's records and conducted a physical residual functional capacity ("RFC") assessment.  He determined that Maloney could occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk about 6 hours in an 8 hour day; sit about 6 hours in an 8 hour day; and is limited in pushing and/or pulling in the right upper extremities.  (D.I. 9-3 at 8)  Dr. Campo determined that Maloney was also limited to pushing and/or pulling 25 pounds occasionally, and 10 pounds frequently, with his right upper extremity.  (*Id.* at 8-9)  Dr. Campo opined that Maloney was limited to occasional overhead reaching with the right upper extremity and had environmental limitations of avoiding concentrated exposure to cold, vibration, and hazards.  (*Id.*)  State agency physician, Carl Bancoff, M.D. ("Dr. Bancoff"), reviewed additional medical evidence concerning Maloney's right shoulder and affirmed Dr. Campo's assessment.  (*Id.* at 30-31)

On November 24, 2014, Dr. Hummer, Plaintiff's treating orthopedist, completed a medical source statement of ability to do work-related activities (physical) and assessed that, due to rotator cuff tendonitis and shoulder osteoarthritis, Maloney could lift and carry less than 10 pounds occasionally; stand and/or walk for one hour; could never push and/or pull with his upper extremities; and could occasionally push and/or pull with his lower extremities.  (D.I. 9-10 at 32-33)  As to postural limitations, Dr. Hummer opined that Maloney could occasionally climb stairs, bend, stoop, and balance, rarely kneel and crouch; and never climb ramps, ladders, ropes, and scaffolds.  (*Id.*)  As to manipulative limitations, Dr. Hummer opined that Maloney could occasionally feel, rarely handle and finger, and never reach in all directions (including overhead), and environmentally should avoid temperature extremes, humidity/wetness, and hazards.  (*Id.*)  Dr. Hummer's

6

assessment was supported by a positive Hawkin's test - bilateral, bilateral elevated shoulders in scapular plane of approximately 100 degrees and positive impinging signs, decreased shoulder strength, and active painful range of motion with limiting factors of pain. (*Id.* at 33)

### C. Administrative Hearings

An administrative hearing took place on December 8, 2014, before the ALJ, with testimony from Maloney, who was represented by counsel, and vocational expert Christina Cody ("VE"). (D.I. 9-2 at 36-62)

### 1. Maloney's Testimony

Maloney was 55 at the time of the hearing. (*Id.* at 42) He has a high school education and one year of college. (*Id.*) Maloney testified that he last worked in June 2009 as an asset control supervisor at Cablenet Services until he was laid off due to downsizing. (*Id.* at 42-43, 45) Maloney collected unemployment until December 2010 and during this time looked for work of a simpler nature than what he had performed. (*Id.* at 43) Maloney testified that he did this because of worsening problems with lifting, pulling standing, pushing, and getting underneath a truck. (*Id.* at 44, 46)

Maloney testified that by 2010 he had problems with both shoulders, his right wrist, and neck. (*Id.* at 44) Maloney is "sort of" ambidextrous, but mostly uses his left hand. (*Id.* at 45) He was treated with physical therapy, steroid injections in both shoulders, and oral medication. (*Id.* at 46-47) In April 2013, Maloney underwent open right shoulder rotator cuff reattachment surgery. (*Id.* at 48) He has not recovered from the surgery and testified that his shoulder feels worse than it did before the operation. (*Id.*) Maloney explained that his surgeon made a diagnosis of osteoarthritis and arthritis and indicated that Maloney needed a shoulder ball and joint replacement. (*Id.* at 49)

Maloney testified to neck pain 24 hours per day and constant bilateral shoulder pain radiating down to his hands and fingers. (*Id*. at 47-48) The pain interferes with sleep on a daily basis. (*Id*. at 48) He tries to nap during the day but has difficulty finding a comfortable position. (*Id*.) Maloney takes over-the-counter pain medication which relieves the pain for a short time, but does not take narcotics because he does not want to become dependent upon them. (*Id*. at 50) Maloney also has muscle relaxers to take if necessary. (*Id*.)

Maloney testified to right wrist weakness, an inability to bend his wrist, and an inability to hold anything without dropping it. (*Id*. at 50) He also has constant wrist pain and numbness in his right forearm that runs from his shoulder to his knuckles as well as left arm numbness and sharp pain that runs from his shoulder down to his wrist. (*Id*. at 50-51)

At the time of the hearing, Maloney lived with his elderly parents and testified that he helped care for them by getting them breakfast, driving them to appointments, running errands, assisting with light household chores, and taking his father to dialysis. (*Id*. at 42, 54-56) Maloney testified that on a typical day he can sit for five to ten minutes before getting up and moving around; he can stand in one position for three or four minutes; and he can walk 30 or 40 yards before sitting down to rest. (*Id*. at 52) He has to stop due to numbness in his arms and right leg. (*Id*. at 52) Maloney tries not to lift anything with his right hand and can lift four to five pounds with his left hand. (*Id*. at 53) Maloney has difficulty dressing himself. He cannot put on a belt, button shirts, or tie a tie, and has a hard time putting on a jacket. (*Id*. at 53-54)

## 2.  Vocational Expert's Testimony

The ALJ asked the VE whether a hypothetical person of Maloney's age, education, and work history who could perform work at the light exertional level with an occasional reach overhead with both arms, and who can have moving machinery, occasional exposure to extreme cold, vibration, and hazards such as moving machinery and unprotected heights, could perform any of Maloney's

8

past work. (*Id.* at 58-59). The VE testified that Plaintiff's past work as a stock control manager position as it is typically performed in the national economy would be feasible with those limitations. (*Id.* at 59)

When the ALJ asked if the individual could perform the claimant's past work if one added that the individual could occasionally handle and finger with the non-dominant right arm, the VE, responded "no." (*Id.* at 59) The VE opined, however, there were other jobs in the national economy that the individual could perform including an order caller, redemption clerk, and final inspector, and that the individual could perform these positions when adding occasional climbing ramps and stairs, but never ladders, ropes, and scaffolds, and occasional balance, stoop, kneel, crouch, and crawl. (*Id.* at 59-60) The VE further opined that if the individual was limited to sedentary work he could perform the positions of surveillance system monitor, type copy examiner, and document preparer. (*Id.* at 60) Finally, the VE opined that the added limitations of less than occasional changing positions of the head or of sitting less than two hours, standing, walking one hour, or absent three or more days per month, would be work preclusive in and of themselves as well as in a combination. (*Id.* at 60-61)

### D.   The ALJ's Findings

The ALJ found that Maloney had the severe impairments of degenerative disc disease of the cervical spine and osteoarthritis of the shoulders, and concluded that the conditions were not disabling. The ALJ found that Maloney's impairments of basil cell carcinoma, right wrist SLAC, left upper extremity, and lower back pain were not severe. (D.I. 9-2 at 22-24) The ALJ found that although Maloney's impairments were subjectively severe, there was insufficient evidence of record to meet the requirements of a listing in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.* at 24) The ALJ found that Maloney has the residual functional capacity to perform light work except that he can only occasionally reach overhead with his bilateral upper extremities and is limited to only

9

occasional exposure to extreme cold, vibration, and hazards. (*Id.*) The ALJ determined that

Maloney could perform his past relevant work as a stock control manager and, therefore,

determined that Maloney was not disabled from December 15, 2010 through the February 5, 2015

decision. (*Id.* at 29)

## III.   LEGAL STANDARDS

### A.   Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of a genuine issue

of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986).  A

party asserting that a fact cannot be -- or, alternatively, is -- genuinely disputed must be supported

either by citing to "particular parts of materials in the record, including depositions, documents,

electronically stored information, affidavits or declarations, stipulations (including those made for

the purposes of the motions only), admissions, interrogatory answers, or other materials," or by

"showing that the materials cited do not establish the absence or presence of a genuine dispute, or

that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P.

56(c)(1)(A) & (B).  If the moving party has carried its burden, the nonmovant must then "come

forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at

587 (internal quotation marks omitted).  The Court will "draw all reasonable inferences in favor of

the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves

v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than

simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at

586-87; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

**B.    Review of the ALJ's Findings**

The Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." *See* 42 U.S.C. § 405(g); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence" means less than a preponderance of the evidence but more than a mere scintilla of evidence. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record. *See Monsour*, 806 F.2d at 1190. The Court's review is limited to the evidence that was actually presented to the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001).

11

However, evidence that was not submitted to the ALJ can be considered by the Appeals Council or the District Court as a basis for remanding the matter to the Commissioner for further proceedings, pursuant to the sixth sentence of 42 U.S.C. § 405(g). *See Matthews*, 239 F.3d at 592. "Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence." *Gonzalez v. Astrue*, 537 F. Supp. 2d 644, 657 (D. Del. 2008) (internal quotation marks omitted).

> The Third Circuit has explained that:

> > a single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

Thus, the inquiry is not whether the Court would have made the same determination but, rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Even if the reviewing Court would have decided the case differently, it must give deference to the ALJ and affirm the Commissioner's decision if it is supported by substantial evidence. *See Monsour*, 806 F.2d at 1190-91.

## IV.   DISCUSSION

### A.   Disability Determination Process

Title II of the Social Security Act, 42 U.S.C. § 423(a)(1)(D), "provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Title XVI of the Social Security Act provides for the payment of disability benefits to indigent persons under the SSI program. *See* 42 U.S.C. § 1382(a). A "disability" is defined for purposes of both DIB and SSI as the inability to

do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis. *See* 20 C.F.R. §§ 404.1520, 416.920; *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999). If a finding of disability or nondisability can be made at any point in the sequential process, the Commissioner will not review the claim further. *See* 20 C.F.R. § 404.1520(a)(4), § 416.920(a)(4).

At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)94)(i) (mandating finding of nondisability when claimant is engaged in substantial gainful activity). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (mandating finding of nondisability when claimant's impairments are not severe). If the claimant's impairments are severe, the Commissioner, at step three, compares the claimant's impairments to a list of impairments that are presumed severe enough to preclude any gainful work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 419.920(a)(4)(iii); *Plummer*, 186 F.3d at 428. When a claimant's impairment or its equivalent matches an impairment in the

listing, the claimant is presumed disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four, the Commissioner determines whether the claimant retains the residual functional capacity ("RFC") to perform his past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (stating claimant is not disabled if able to return to past relevant work); *Plummer*, 186 F.3d at 428. A claimant's RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Fargnoli v. Halter*, 247 F.3d 34, 40 (3d Cir. 2001). "The claimant bears the burden of demonstrating an inability to return to [his] past relevant work." *Plummer*, 186 F.3d at 428.

If the claimant is unable to return to his past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude him from adjusting to any other available work. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (mandating finding of non-disability when claimant can adjust to other work); *Plummer*, 186 F.3d at 428. At this last step, the burden is on the Commissioner to show that the claimant is capable of performing other available work before denying disability benefits. *See Plummer*, 186 F.3d at 428. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Id.* In making this determination, the ALJ must analyze the cumulative effect of all of the claimant's impairments. *See id.* At this step, the ALJ often seeks the assistance of a VE. *See id.*

### B.   The Issues Raised on Appeal

Maloney presents the following issues in his appeal and moves for summary judgment on the grounds that the ALJ erred: (1) because he was selective in the medical information he considered in denying benefits; (2) in finding Plaintiff not entirely credible; (3) because he did not give appropriate weight to Maloney's treating physician; and (4) because he ignored the opinions of the VE. The Commissioner moves for summary judgment on the grounds that: (1) the ALJ reasonably concluded that Maloney was not disabled under the stringent requirements of the Act and Regulations; (2) the ALJ appropriately evaluated Maloney's subjective complaints in light of the evidence of record; (3) Maloney's bald allegations do not demonstrate bias and the ALJ's considerations were explicitly in conformance with the regulations; and (4) Maloney did not demonstrate the mandatory requirements for a Sentence Six remand.

### C.   Substantial Evidence

Maloney contends that the ALJ "cherry picked" the evidence when he failed to consider the 11 months Maloney received chiropractic treatment and found fault because he did not see his orthopedic surgeon during that time; failed to mention that Maloney needed a shoulder replacement; failed to address the underlying disc issues that caused Maloney's shoulder pain; and did not consider that Maloney's degenerative issues and pain have worsened daily, as have his osteoarthritis, osteoarthrosis, and degenerative disc problems. Maloney points out that he underwent a nerve ablation procedure on March 30, 2015 (which was after the issuance of the ALJ's February 5, 2015 decision). The Commissioner contends that the ALJ reasonably concluded that Maloney was not disabled under the Act when he applied the sequential evaluation process and determined at step four that Maloney could perform his past relevant work.

The final responsibility for determining a claimant's residual functional capacity is reserved

to the Commissioner. *See Breen v. Commissioner of Soc. Sec.*, 504 F. App'x 96 (3d Cir. Nov. 14, 2012)

(citing 20 C.F.R §§ 404.1546(c)). Here, the ALJ considered the effects of Maloney's conditions in

relation to his ability to perform work. The ALJ found that Maloney has severe impairments of

degenerative disc disease of the cervical spine and osteoarthritis of the shoulders. It is clear in

reading the ALJ's decision that he thoroughly reviewed Maloney's longitudinal treatment history.

The ALJ noted that the majority of Maloney's treatment was conservative in nature, and the records

indicate that he responded well to conservative treatment and has shown improvement. The ALJ

noted that Maloney opted to take over-the-counter medications for pain control and tries to avoid

taking prescribed muscle relaxants that were prescribed on as needed basis.

The ALJ further noted that Maloney received only minimal and sporadic treatment with

regard to his cervical and left shoulder pain and that Maloney's complaints were minimal despite

degenerative changes. The ALJ referred to medical records showing Maloney denied neck pain in

January 2014 and did not seek treatment for neck pain until July 2014, following an automobile

accident a month earlier. MRI studies indicate that as of November 2014, Maloney's cervical spine

revealed essentially stable moderate degenerative disc disease.

With regard to Maloney's left shoulder, by December 2013, he described the left arm pain as

occasional and fluctuating without radiation, and his orthopedist reported that he did not believe

that Maloney had a full thickness tear and further that Maloney's left shoulder range of motion and

strength were satisfactory. Similar to treatment for neck pain, Maloney did not seek treatment for

left shoulder pain until after the June 2014 automobile accident.

The ALJ noted that Maloney's right shoulder impairment appeared to be his most significant

issue, while observing that he did not report the impairment until almost two years after the alleged

16

January 2013 onset date. As of July 2013, Maloney had acceptable post-operative range of motion, with significant pain. The ALJ noted that a January 2014 EMG of the right upper extremity was essentially normal and upon examination Maloney had hand grip strength of four out of five. He also noted that when Maloney sought treatment for his neck and left shoulder following the June 2014 automobile accident, Maloney relayed a history of right shoulder pain but was currently asymptomatic.

In addition, in assessing Maloney's physical residual functional capacity, the ALJ afforded some weight to the State agency medical consultants who found Maloney capable of work at a medium level of exertion, but with limited pushing and/or pulling with the right upper extremity of 25 pounds occasionally and ten pounds frequently, and limited occasional overhead reaching of the right upper extremity. The ALJ accommodated Maloney's impairments by limiting him to only occasional reaching overhead with his bilateral upper extremities and, although the record did not indicate that Maloney has lifting restrictions, accommodated Maloney's degenerative disc disease of the cervical spine and bilateral shoulder osteoarthritis by limiting him to light work.

The ALJ thoroughly analyzed the medical evidence, considered the medical opinions and, as discussed below, appropriately relied upon the testimony of the VE. Accordingly, the Court finds that substantial evidence supports the ALJ's ruling and his evaluation of Maloney's RFC.

### D.     Credibility

Maloney contends that the ALJ erred in assessing his credibility because he found that Maloney had not seen his orthopedic surgeon during an 11-month period, even though he was receiving chiropractic treatment during this same time-frame. He further contends that the ALJ's credibility determination may have been different had he known more about Maloney's personal life, which included taking care of his elderly father. As discussed above, credibility determinations

should only be disturbed on review if not supported by substantial evidence, as such a determination is the province of the ALJ.

The ALJ fully detailed Maloney's testimony regarding his severe restrictions in his functional abilities. The ALJ provided a detailed explanation as to why he found Maloney not entirely credible and, in doing so, thoroughly reviewed the objective medical evidence to explain why the clinical documentation undercut Maloney's credibility as to the severity of his symptoms. For example, the ALJ noted there were no alleged impairments that would cause Maloney's claimed inability to sit or stand for long periods, cause problems with bending, or interfere with his walking. Maloney testified to right leg numbness, but the record does not indicate Maloney made complaints in this regard. Maloney testified that he was unable to bear any weight with his right hand, and only four to five pounds with his left hand, but medical records do not reflect lifting restrictions. The ALJ also noted that Maloney was not seeking treatment for his neck or shoulder impairments at the time of the alleged onset date and that he did not allege disability until after his unemployment benefits ended. Finally, the ALJ noted that despite his testimony regarding his functional limitations, Maloney also testified to performing a wide range of activities of daily living, including the care of his elderly parents.

The substantial evidence of record supports the ALJ's credibility determination.

### E.     Weight Accorded to Physicians

Maloney contends the ALJ erred in giving no weight or credibility to the medical source statement of Maloney's limitations provided by his treating orthopedic surgeon. An ALJ is free to choose one medical opinion over another where the ALJ considers all of the evidence and gives some reason for discounting the evidence he rejects. *See Diaz v. Commissioner of Soc. Sec.*, 577 F.3d 500, 505-06 (3d Cir. 2009); *Plummer*, 186 F.3d at 429 ("An ALJ . . . may afford a treating physician's

18

opinion more or less weight depending upon the extent to which supporting explanations are provided."). Opinions of a treating physician are entitled to controlling weight only when they are well-supported and not inconsistent with other substantial evidence in the record. *See Hall v. Commissioner of Soc. Sec.*, 218 F. App'x 212, 215 (3d Cir. Feb. 22, 2007) (affirming ALJ's decision to give little weight to treating physician's reports because of "internal inconsistencies in various reports and treatment notes . . . as well as other contradictory medical evidence"); *Fargnoli*, 247 F.3d at 43.

The ALJ detailed his reasons for affording no weight to the November 26, 2014 opinion of treating orthopedist Dr. Hummer. The ALJ noted that none of the restrictions detailed by Dr. Hummer appeared in any of Maloney's medical records and were mentioned only in the statement that was prepared solely for the December 8, 2014 hearing. The ALJ further observed that Dr. Hummer had not treated Maloney for eight months prior to the date of the opinion and that at Maloney's March 17, 2014 office visit, Dr. Hummer instructed Maloney only to return as needed. Finally, the ALJ noted that Dr. Hummer did not explain how Maloney's shoulder impairments would cause the sitting, standing, walking and other limitations expressed in his opinion.

The ALJ considered the evidence of record and provided reasons to support his decision to assign no weight to Dr. Hummer's opinion. The Court finds no error in this decision.

**F.    Vocational Expert Opinions**

Maloney contends that the ALJ gave no heed to the VE's opinion that there was no reasonable work that Maloney could do. The VE proffered several opinions regarding Maloney's ability to perform work. Maloney focuses on one of those opinions without consideration of other portions of the VE's testimony.

19

Of note is that the ALJ posed hypotheticals to the VE that accurately portrayed Maloney's physical impairments, *see Rutherford*, 399 F.3d at 554, and in response, the VE opined that Maloney could perform his past relevant work as a weigh master and stock control manager. The ALJ did not error in considering and relying upon the VE's opinion in concluding that Maloney is not disabled, based upon his finding that Maloney could perform his past relevant work as a stock control manager as the work is generally performed.

Finally, Maloney's position ignores the fact that it is the ALJ, and not the VE who makes the ultimate decision regarding disability. A VE's expert opinion on disability does not bind the ALJ and is merely a tool available to the ALJ to help the ALJ determine whether a claimant's work skills are transferable to other occupations and the specific occupations to which they can be applied. *See Faulker v. Astrue*, 2007 WL 2936111 (D. Del. Oct. 9, 2007) (citing 20 C.F.R. § 404.1566).

### G.    Bias

Maloney appears to argue a bias by the ALJ when he alludes to the ALJ's alleged low disability approval rate. A Social Security claimant has the right to a fair hearing before an impartial ALJ. *See Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995).

Plaintiff makes a sweeping claim that the ALJ exhibited bias, based upon unidentified prior decisions. The Third Circuit has endorsed a district court's remand for bias where a claimant's hearing was "shameful in its atmosphere of alternating indifference, personal musing, impatience and condescension." *Ventura*, 55 F.3d at 905. The Court has thoroughly reviewed the hearing transcript and finds in it no support for Maloney's claim of bias. Moreover, Maloney was represented by counsel during the administrative proceedings and did not raise the issue of bias in his request for review when he had an opportunity to do so.

20

While Maloney may not agree with the ALJ's findings, he points to no evidence to support his claim of bias on the part of the ALJ.

## H.    New Evidence

Maloney, who was represented by counsel during the administrative proceedings, states that he does not know what documents and medical reports to which the ALJ had access. Maloney's counsel submitted additional medical records before the Appeals Council that were not before the ALJ when he rendered his decision. The Appeals Council considered the records in denying Maloney's request for review, determining the information did not provide a basis for changing the ALJ's decision. Plaintiff also submitted medical records in support of his pending motion, although there was no need as the diagnostic reports are contained in the record considered by the ALJ. (*See* D.I. 16)

When a claimant submits evidence after the ALJ's decision, that evidence cannot be used to challenge the ALJ's decision on the basis of substantial evidence. *See Matthews*, 239 F.3d at 594. Pursuant to 42 U.S.C. § 405(g), sentence six, this Court may, however, order a remand based upon evidence submitted after the ALJ's decision, but only if the evidence satisfies three prongs: (1) the evidence is new; (2) the evidence is material; and (3) there was good cause why it was not previously presented to the ALJ. *See id.* at 593.

Maloney does not meet these requirements. The medical records date from October 28 2014 to April 20, 2015. (*See* D.I. 9-11, D.I. 9-12) Some of the evidence predates the ALJ's February 5, 2015 decision, but neither Maloney nor his attorney before the Appeals Council provided cause why the medical records were not previously presented. The remaining medical records relate to period that post-dates the disability period in question. "[A]n implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern

evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." *Szubak v. Secretary of Health and Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984); *see also Nieves v. Commissioner of Soc. Sec.*, 198 F. App'x 256, 260, n.3 (3d Cir. Oct. 4, 2006) ("Our determination [that the ALJ's decision in 2001 was based on substantial evidence] is in no way swayed by the fact that in October of 2003 an ALJ determined that the petitioner was disabled.") Under 42 U.S.C. § 405(g), the Court's review is limited to the evidence in the record at the time of the ALJ's 2015 decision. Finally, the evidence is not material as it would not have changed the outcome of the ALJ's assessment that Maloney could perform his past relevant work. Hence, the Court finds no basis to remand pursuant to the sixth sentence of 42 U.S.C. § 405(g).[4]

## V.    CONCLUSION

For the foregoing reasons, the Court will: (1) deny Plaintiff's motion for summary judgment (D.I. 15); and (2) grant the Commissioner's motion for summary judgment (D.I. 18).

An appropriate Order will be entered.

---

[4]Maloney has available the option of filing a new application, should he believe the new evidence supports an award for DIB or SSI benefits. *See* 20 C.F.R. § 416.330(b).

22